UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY D. WARD,<br><br>                              Petitioner,<br><br>v.<br><br>NEIL McDOWELL, Warden,<br><br>                              Respondent. | Case No.:  16cv3055-DMS-MDD<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

## I.    <u>INTRODUCTION</u>

This Report and Recommendation is submitted to United States District Judge Dana M. Sabraw pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 72.1(c) of the United States District Court for the Southern District of California.

Troy D. Ward ("Petitioner"), a state prisoner proceeding *pro se* and *in forma pauperis*, seeks federal habeas relief from convictions for one count of first-degree burglary (Cal. Penal Code § 459), two counts of assault by means of force likely to produce great bodily injury (Cal. Penal Code § 245(a)(4)), one count of corporal injury to a former cohabitant or spouse (Cal. Penal Code

§ 273.5(a)) and one count of vandalism under $400 (Cal. Penal Code §594(a)). (ECF Nos. 1, 4); (Lodg. Nos. 3-2 at 312-15; 8 at 2).  After reviewing the Petition [ECF No. 1], Respondent's Answer and Memorandum of Points and Authorities in support thereof ("Answer") [ECF No. 10], Respondent's Supplemental Response to the Petition [ECF No. 15] and pertinent state court lodgments, the Court **RECOMMENDS** Petitioner's federal Petition for Writ of Habeas Corpus be **DENIED**.

## II.   FACTUAL BACKGROUND

### A.   State Proceedings

"[A] determination of a factual issue made by a State court shall be presumed to be correct."  28 U.S.C. § 2254(e)(1).  Petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997) *overruled on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997) (stating that federal courts are required to "give great deference to the state court's factual findings.").  Accordingly, the following facts are taken from the California Court of Appeal's November 20, 2014, opinion in *People v. Troy D. Ward*, Appeal No. D064330.  (*See* Lodg. No. 8).

A.   Relationship Between Buganan and [Petitioner]

Buganan and [Petitioner] were involved in a dating relationship starting in 2009.  The relationship was tumultuous, and they broke up but resumed dating over the years.  During one period of separation in 2010, [Petitioner] was sentenced to state prison and served time after he was convicted of committing domestic violence against Buganan, who continued to visit [Petitioner] while he was incarcerated, however, because she hoped they could work out their problems and resume a romantic relationship. When [Petitioner] was released from prison in the fall of 2011, Buganan picked him up from the prison and took him to her house and was intimate with him that night.  They resumed their dating relationship during the next nine months, and he

moved into Buganan's mobile home in the spring of 2012.

B. <u>The Charged Offenses</u>

About one month after [Petitioner] moved into Buganan's home, she ended their relationship and told him to take his possessions and move out. She told [Petitioner] she would put his possessions on the back porch for him to pick up and [Petitioner] said he would return to retrieve them. She put his possessions on the porch and, after about one week, he retrieved them. Buganan told [Petitioner] not to come to her house any more. However, [Petitioner] continued to come to her home. Buganan believed he entered the mobile home when she was not there, and also believed he was responsible for using an external water lever to turn off the water to the mobile home on several occasions.

Buganan began a romantic relationship with Williams around the time she told [Petitioner] to move out in 2011. On a couple of occasions, she dropped Williams off so he could go inside her mobile home while she parked her car, and [Petitioner] approached Buganan and told her to have "that punk" (referring to Williams) come outside. On the evening of May 3, 2012, Buganan and Williams were at the mobile home when Buganan realized the water to the mobile home had again been shut off, and she suspected [Petitioner] was responsible. She went to a sliding glass door in the bedroom, carrying a small flashlight, to look outside for [Petitioner]. Buganan put her eye up to the window to look out and [Petitioner], standing just outside the door holding a hammer, immediately struck the door and the glass shattered. Glass flew into Buganan's eye and [Petitioner] immediately entered.

Buganan tried to escape from the bedroom into the hallway but [Petitioner] stopped her by grabbing her and shoving her into the corner of the room with such force that it caused bruising to (and scratches on) her chest. He then put both hands around her neck to choke her.

Williams, who heard the glass shatter and Buganan scream, rushed into the bedroom. He saw [Petitioner] holding Buganan by the neck against the wall. [Petitioner] released Buganan and turned on Williams who, realizing [Petitioner] was about to turn on

him, told Buganan to leave. [Petitioner] grabbed Williams and the two men began wrestling while Buganan ran outside to summon help.

Williams testified the two men began wrestling and [Petitioner] lifted Williams completely off his feet and threw him through the shattered glass door. Williams landed outside and jumped to avoid landing on an electrical box but ended up landing on his head and neck area. He got up as [Petitioner] pursued him through the door. [Petitioner] punched him several times in the face and chest as he tried to fight back. The men grappled and crashed through a neighbor's fence, knocking it down. They both got up, continuing to wrestle and throw punches, and [Petitioner] threw Williams against a shed. The fight continued and they ended on Buganan's car, with [Petitioner] on top. However, Williams continued to fight back and [Petitioner] started to flee. Williams caught and tried to hold him until the sheriff arrived, but [Petitioner] was able to pull away from Williams and run off. The fight lasted between five and 10 minutes.

A deputy sheriff responding to the scene found Buganan screaming and crying uncontrollably. The deputy also saw Williams, who was naked, had sustained a cut near his left eye around the temple area. He also suffered a cut to his leg caused by the glass when he was fighting [Petitioner] on the ground, a "big cut" to his thigh, and cuts on his head, back and left side of his eye. Approximately one week later, [Petitioner] was found near the mobile home park and arrested.

## C. [Petitioner's] Prior Domestic Violence Against Buganan

During one of their periods of separation, [Petitioner] borrowed Buganan's car to go to a medical appointment. When Buganan could not locate [Petitioner] at the place of the appointment, she (accompanied by her friends Sherri and Elizabeth Rodriguez) went to [Petitioner's] workplace to get her car. [Petitioner] opened the gate to allow Buganan and Elizabeth onto the property while Sherri remained in Buganan's truck. However, [Petitioner] was apparently angry at Buganan and, after Elizabeth went back out the gate, [Petitioner] closed the gate with Buganan still inside, and began assaulting her. He struck her and knocked

16cv3055-DMS-MDD

her down several times, and threatened to kill her. Sheri [sic] and Elizabeth demanded [Petitioner] stop and he let Buganan go, and she started walking back to her truck. However, he followed her and continued to grab her and knock her down. When she reached the truck, he grabbed the chain around her neck as though he was going to choke her. He then stopped the assault and walked back inside the gate.

Buganan walked down the gravel road to locate Elizabeth, who had gone to find help. Buganan heard Sherri yell, "Run. He's coming down with the car," and they saw [Petitioner] driving toward Buganan "pretty fast." Buganan, fearing [Petitioner] would hit her with the car, first tried to seek shelter in a passerby's vehicle, but when the passerby drove off, she ran behind a tree and then behind a fence of another residential property. [Petitioner] drove toward her at the fence, coming within a few feet or inches. Buganan obtained assistance by calling an ambulance from a nearby house and was treated at the hospital for her injuries for several hours.

When she testified at his criminal proceedings for the 2010 assault, she was not completely honest because she thought they could work out their relationship, and because she was scared he might hurt her when he was released from prison. Similar reasons led her to discount [Petitioner's] actions when she spoke with personnel at the district attorney's office in connection with the original 2010 case.

D. Defense

[Petitioner] testified on his own behalf. At Buganan's invitation, he went to her mobile home on May 3 to collect his belongings. Buganan invited him inside and told him his property was in the master bedroom but, when he went to the bedroom, she tried to touch and hug him. He resisted her advances but he then heard the front door open and Williams came inside the mobile home, entered the bedroom, and assaulted [Petitioner]. They wrestled and crashed through the glass door and, after a few minutes of fighting, [Petitioner] left because he was violating his parole by being at Buganan's home.

(Lodg. No. 8 at 3-7).

A jury convicted Petitioner of one count of first-degree burglary, two counts of assault by means of force likely to produce great bodily injury involving Buganan and Williams, one count of corporal injury to a former cohabitant or spouse and vandalism under $400. (*Id.* at 2). The Court found true the special allegations that Petitioner had a prior conviction, suffered two prior strike convictions, served three prior prison terms and had two prior serious felony convictions. (*Id.*). The Court sentenced Petitioner to a term of 35 years to life. (*Id.*).

Petitioner appealed from the trial court's judgment, raising seven issues: (1) there was insufficient evidence to support his convictions for assault against Buganan and Williams; (2) there was insufficient evidence to support a burglary conviction; (3) the trial court abused its discretion by denying Petitioner's request to have Buganan's ex-boyfriend testify; (4) the trial court abused its discretion by admitting evidence of the conviction for the 2010 incident; (5) the trial court abused its discretion when it denied Petitioner's motion to dismiss a prior strike conviction under *People v. Superior Court (Romero)*, 13 Cal. 4th 497 (1996) ("*Romero*"); (6) the trial court erred when it sentenced Petitioner to concurrent terms on counts two and four instead of staying the sentences on those counts; and (7) the court miscalculated his custody credits. (Lodg. No. 5 at 19-67). The Court of Appeal modified Petitioner's sentence by staying count two pending successful service of the balance of Petitioner's sentence, at which time the stay will become permanent, and amended Petitioner's sentence to reflect that he is entitled to 388 days of custody credits. (Lodg. No. 8 at 29). The Court of Appeal otherwise affirmed the judgment. (*Id.*).

On December 30, 2014, Petitioner petitioned the California Supreme

Court for review of the Court of Appeal's November 20, 2014, opinion. (Lodg. No. 9). Petitioner raised four issues: (1) there was insufficient evidence to support his convictions for assault against Buganan and Williams; (2) the trial court abused its discretion by denying Petitioner's request to have Buganan's ex-boyfriend testify; (3) the trial court abused its discretion by admitting evidence of the conviction for the 2010 incident; and (4) the trial court abused its discretion when it denied Petitioner's motion to dismiss a prior strike conviction under *Romero*. (*Id.* at 10-41). On February 11, 2015, the California Supreme Court denied the petition for review. (Lodg. No. 10).

On January 14, 2016, Petitioner signed a petition for writ of habeas corpus in the San Diego County Superior Court. (Lodg. No. 11). Petitioner challenged his convictions on the grounds that Petitioner received ineffective assistance of counsel. (*Id.* at 3-8). On May 21, 2016, the San Diego County Superior Court denied the petition on the merits. (Lodg. No. 12 at 4).

On May 31, 2016, Petitioner filed a state habeas petition in the California Court of Appeal, arguing that: (1) his counsel, parole officer and Buganan "misled" him about staying away from Buganan and her mobile home; (2) there was no burglary because he lived in the mobile home; (3) the trial court should have dismissed one or both of his strike convictions; (4) he never had any weapons and was defending himself; and (5) the prosecutor mixed up the 2012 facts with the 2010 facts. (*See* Lodg. No. 13). The California Court of Appeal denied the petition as untimely, because Petitioner's arguments were raised and rejected on appeal and because Petitioner's claims are not cognizable in a habeas corpus proceeding. (Lodg. No. 14 at 2).

On July 6, 2016, Petitioner signed a petition for writ of habeas corpus in the California Supreme Court, raising the same issues as his California

Court of Appeal petition. (*See* Lodg. Nos. 13, 15). On September 14, 2016, the California Supreme Court denied the petition. (Lodg. No. 16).

**B.    Federal Proceedings**

On December 12, 2016, the date of his signature, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court. (ECF No. 1). Petitioner raises five grounds for relief: (1) there was insufficient evidence to support his conviction for first-degree burglary; (2) there was insufficient evidence to convict Petitioner of assault by means of force likely to produce great bodily injury upon Williams and Buganan; (3) the trial court erred when it excluded the testimony of Buganan's ex-boyfriend; (4) the trial court abused its discretion in admitting facts from Petitioner's 2010 conviction; and (5) the trial court abused its discretion in failing to strike one or both of Petitioner's prior strike convictions. (*Id.* at 6-10).

On March 14, 2017, Respondent filed an Answer, which addressed only four of Petitioner's grounds for relief.[1] (ECF No. 10). On March 30, 2017, this Court ordered Respondent to file a supplemental response to the Petition addressing ground five. (ECF No. 30). On April 3, 2017, Respondent filed a supplemental response. (ECF No. 15). Petitioner did not file a traverse. (*See* Docket).

## III.    <u>STANDARD OF REVIEW</u>

This Petition is governed by the provisions of the Antiterrorism and

---

[1] Respondent's Answer was initially filed with a Motion for Leave to File Excess Pages on March 14, 2017. (ECF No. 8). The Court granted Respondent's motion and ordered the Clerk of Court to file Respondent's Answer as a separate docket entry. (ECF No. 9). The Clerk of Court filed the Answer on March 15, 2017. (*See* ECF No. 10).

Effective Death Penalty Act of 1996 ("AEDPA").  *See Lindh*, 521 U.S. 320.

Title 28, U.S.C. § 2254(a) provides the scope of review for federal habeas

corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

Under AEDPA, a habeas petition will not be granted with respect to any

claim adjudicated on the merits by the state court unless that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable

application of clearly established federal law; or (2) resulted in a decision that

was based on an unreasonable determination of the facts in light of the

evidence presented at the state court proceeding.  28 U.S.C. § 2254(d); *Early*

*v. Packer*, 537 U.S. 3, 7-8 (2002).

Clearly established federal law "refers to the holdings, as opposed to the

dicta, of [the United States Supreme] Court's decisions . . . ."  *Williams v.*

*Taylor*, 529 U.S. 362, 412 (2000).  A state court's decision may be "contrary

to" clearly established Supreme Court precedent "if the state court applies a

rule that contradicts the governing law set forth in [the Court's] cases" or "if

the state court confronts a set of facts that are materially indistinguishable

from a decision of [the] Court and nevertheless arrives at a result different

from [the Court's] precedent."  *Id*. at 405-06.  A state court decision does not

have to demonstrate an awareness of clearly established Supreme Court

precedent, provided neither the reasoning nor the result of the state court

decision contradict such precedent.  *Early*, 537 U.S. at 8.

A state court decision involves an "unreasonable application" of

9

Supreme Court precedent "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Williams*, 529 U.S. at 407. An unreasonable application may also be found "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.*; *Wiggins v. Smith*, 539 U.S. 510, 520 (2003); *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir. 2003).

Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, 134 S.Ct. 1697, 1706-07 (2014) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). An unreasonable application of federal law requires the state court decision to be more than incorrect or erroneous. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Instead, the state court's application must be "objectively unreasonable." *Id.*; *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Even if a petitioner can satisfy § 2254(d), the petitioner must still demonstrate a constitutional violation. *Fry v. Pliler*, 551 U.S. 112, 119-22 (2007).

Federal courts review the last reasoned decision from the state courts. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991); *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 6 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). The petitioner must

16cv3055-DMS-MDD

establish that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement. . . ." *Burt v. Titlow*, 134 S.Ct. 10, 12 (2013) (internal citation omitted). It is not within a federal habeas court's province "to reexamine state court determinations on state-law questions. . . ." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

# IV.   **DISCUSSION**

## A.   **Claims 1 and 2: Insufficient Evidence**

In claim 1, Petitioner argues that there is insufficient evidence to support his conviction of first-degree burglary. (ECF No. 1 at 6). In claim 2, Petitioner asserts that there was insufficient evidence to prove he assaulted Williams and Buganan with force likely to produce great bodily injury. (*Id.* at 7).

### 1.   **Legal Standard**

The Fourteenth Amendment's Due Process Clause protects criminal defendants from convictions "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). In a federal habeas proceeding, a petitioner challenging the sufficiency of the evidence may obtain relief only if "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). A reversal for insufficiency of the evidence is essentially a "determination that the government's case against the defendant was so lacking that the trial

court should have entered a judgment of acquittal." *McDaniel v. Brown*, 558 U.S. 120, 131 (2010) (quoting *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988)) (internal quotations omitted).

It is the jury's responsibility "to decide what conclusions should be drawn from evidence admitted at trial" and a reviewing court can overrule a jury verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*). "The reviewing court must respect the exclusive province of the fact finder to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts" by assuming that the jury resolved all conflicts in support of the verdict. *United States v. Hubbard*, 96 F.3d 1223, 1226 (9th Cir. 1996); *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). If the record supports conflicting inferences, the court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326.

The court applies the standard with specific reference to the applicable state law defining the elements of the crime at issue. *Id.* at 324 n.16; *see also Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir. 2004) (*en banc*). The reviewing court also applies "an additional layer of deference" under AEDPA: habeas relief is not warranted unless "the state court's application of the *Jackson* standard [was] 'objectively unreasonable.'" *Juan H. v. Allen*, 408 F.3d 1262, 1274-75 n.13 (9th Cir. 2005) (as amended) (citation omitted); *see Cavazos*, 565 U.S. at 2 ("[A] federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'") (internal

citation omitted).

## 2. Assault

Petitioner presented both insufficient evidence of assault claims to the state appellate and supreme courts on direct review. (Lodg. Nos. 5, 9). The appellate court denied Petitioner's claim on the merits and the California Supreme Court summarily denied the petition without a statement of reasoning or citation to authority. (Lodg. Nos. 8, 10). Accordingly, this Court must "look through" to the state appellate court's opinion denying the claim as the basis for authority. *Ylst*, 501 U.S. at 805-06. That court wrote:

*Count Four: The Assault on Williams*

[Petitioner] argues there was no evidence he assaulted Williams with force likely to cause great bodily injury because he only threw Williams through a glass door, the glass of which was already broken, and then grappled with and punched Williams, who sustained only minor injuries. However, the jury was entitled to consider that [Petitioner] was apparently much larger than Williams [because the jury saw both men at trial and heard the 911 call from Buganan including her description that Petitioner was five inches taller and 90 pounds heavier than Williams] and was able to lift him completely off his feet when he threw him through the shattered glass door, and that Williams landed on his head and neck area in an area littered with broken glass, and only fortuitously avoided substantial injury by twisting to avoid landing on an electrical box. This evidence would permit a jury to infer that, although Williams in fact avoided more significant injury, [Petitioner] did apply force *likely* to cause great bodily injury. Moreover, a jury was entitled to consider that [Petitioner], with his considerable size advantage, punched Williams several times in the face and chest and threw him against a shed, and that the fight was so fierce they crashed through and knocked down a neighbor's fence. A rational trier of fact could conclude that, although William's injuries were not more significant, [Petitioner] nevertheless did apply force *likely* to cause great bodily injury.

*Count Three: The Assault on Buganan*

[Petitioner] asserts there is no evidence from which a jury could have concluded he assaulted Buganan with force likely to cause great bodily injury. However, there was some evidence from which the jury could have inferred [Petitioner] "knew . . . that he used an amount of force a reasonable person would realize was likely to result in great bodily injury," or that he "act[ed] with awareness of facts that would lead a reasonable person to realize that great bodily injury would directly, naturally, and probably result from his act." Buganan testified she went to a sliding glass door in the bedroom carrying a small flashlight to look outside for [Petitioner] and, when she put her eye up to the window to look out, [Petitioner] used his hammer to strike the door and shatter the glass adjacent to her eye, and that glass flew into her eye. A reasonable jury could have inferred, from the fact that it was dark outside where [Petitioner] stood but illuminated inside when Buganan placed her face against the glass door to peer out, that [Petitioner] was within arm's length of the window and would have seen Buganan approach and place her eye next to the window but [Petitioner] nevertheless swung the hammer to shatter the glass into her face. A reasonable jury could infer [Petitioner] thus used an amount of force "a reasonable person would realize was likely to result in great bodily injury" or, at a minimum, acted "with awareness of facts that would lead a reasonable person to realize that great bodily injury would directly, naturally, and probably result from his act."

Although the foregoing evidence would suffice to support the conviction, there was also evidence [Petitioner] thereafter continued his assault on Buganan and employed force likely to result in great bodily injury: [Petitioner] shoved her with such force that it caused bruising to (and scratches on) her chest and put both hands around her neck to choke her. A rational jury could conclude that commencing to cut off Buganan's air supply was an application of force likely to cause great bodily injury, and would have in fact caused great bodily injury but for the fortuity that Williams interrupted [Petitioner's] attack on Buganan.

(Lodg. No. 8 at 9-11) (internal citations and footnotes omitted).

//

16cv3055-DMS-MDD

### a. Summary of Arguments

Petitioner argues there was insufficient evidence to convict him of assault against Buganan because "there was no evidence that any force would be expected to be applied to Buganan from the breaking of the door" and that "grabbing Buganan by the shoulders and pushing her into a corner was not force likely to produce great bodily injury." (ECF No. 1 at 6). Petitioner argues there was insufficient evidence of assault upon Williams because they were in a "man-to-man" fight and Williams sustained only minor injuries. (*Id.* at 52-55).

Respondent contends there was sufficient evidence to convict Petitioner of the assaults against Buganan and Williams because "California Penal Code § 245 prohibits an assault by means of force likely to produce great bodily injury, not the use of force which does in fact produce such injury." (ECF No. 10-1 at 34-37). Thus, the jury could rationally infer that Petitioner applied force likely to cause great bodily injury when he used a hammer to shatter the sliding glass door adjacent to Buganan's eye. (*Id.* at 36). Further, a rational jury could conclude the requisite force was used against Buganan when Petitioner shoved her into a wall, causing bruising to, and scratches on, her chest and put his hands around her neck to choke her. (*Id.*). Respondent asserts that a reasonable jury could also conclude that Petitioner applied force likely to cause great bodily injury upon Williams when Petitioner threw him through a glass door, punched him several times, threw him against a shed, and fought him so fiercely that they crashed through and knocked down a fence. (*Id.* at 35).

### b. Analysis

California Penal Code § 245(a)(4) punishes "[a]ny person who commits an assault upon the person of another by any means of force likely to produce

great bodily injury . . . ."

> An assault by means of force likely to produce great bodily injury, is an assault, as to which the force essential to all assaults is of such a nature or degree that the probable result of its application will be the infliction of great bodily injury . . . . Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate.

*People v. Covino*, 100 Cal. App. 3d 660, 668 (1980) (internal citations omitted). The use of hands or fists alone may support a conviction of assault by means of force likely to produce great bodily injury and actual bodily injury is not a required element of the crime. *People v. Aguilar*, 16 Cal. 4th 1023, 1028, 1036 n.9 (1997); *Covino*, 100 Cal. App. 3d at 667 (finding that the determinative issue is not whether the defendant inflicted serious injury, but whether the force used by defendant was such that it would be likely to cause the injury).

### i.      The Assault on Buganan

Buganan testified that she suspected Petitioner turned off the water to her mobile home and was still on the premises. (Lodg. No. 1-3 at 139). She held a flashlight up to the sliding glass door in her master bedroom and put her eyes up to the window to see if Petitioner was outside. (*Id.* at 139-40). At that moment, Petitioner broke the sliding glass door with a hammer and "flew" into the master bedroom. (*Id.* at 140). Some of the shattered glass got into Buganan's eyes. (*Id.* at 149, 155). Buganan tried to get out of the bedroom, but Petitioner grabbed her on the top of her chest, pushed her into the corner and then put both his hands around her neck and began choking her. (*Id.* at 141). Buganan sustained bruising on the left side of her eye, bruising around her chest, scratches from being pushed into the wall and had glass stuck in both eyes. (*Id.* at 155-56). Petitioner testified that he did not

use a hammer to break the sliding glass door and did not harm Buganan. (*See* Lodg. No. 1-5 at 450-69).

The jury determined that Buganan's testimony was more credible than Petitioner's testimony. The evidence established that Petitioner shattered the sliding glass door, propelling glass into Buganan's eyes, then grabbed her chest and pushed her into a corner with sufficient force to cause bruising and then began to choke her. Based on this evidence, the California Court of Appeal reasonably concluded there was sufficient evidence for a jury to convict Petitioner of assault with force likely to cause great bodily injury. *See Aguilar*, 16 Cal. 4th at 1028 (explaining that the focus is on force *likely* to produce great bodily injury); *see also People v. Armstrong*, 8 Cal. App. 4th 1060, 1065 (1992) (stating that the victim does not have to actually suffer great bodily injury); *Ross v. Hense*, No. CV 07-6232 R(AJW), 2009 WL 322146, at *5 (C.D. Cal. Feb. 3, 2009) (finding the state court's determination that pushing the victim down and wrestling with the victim where the victim sustained bruises and scratches provided sufficient evidence of force likely to cause great bodily harm and was not unreasonable under AEDPA deference).

### ii. The Assault on Williams

Williams testified that he went to the master bedroom to help Buganan after he heard glass shattering and Buganan screaming. (Lodg. No. 1-4 at 257). Williams told Buganan to leave and Petitioner and Williams began to wrestle. (*Id.* at 259). Petitioner picked Williams off the ground and threw him through the shattered sliding glass door. (*Id.* at 259-60). Williams had to jump to avoid landing on an electrical box and ultimately landed on his head and back. (*Id.* at 262).

Williams got up and began wrestling with Petitioner. (*Id.*). Williams and Petitioner started punching each other in the chest and face. (*Id.* at 263-

64). As the two struggled with each other outside, they "crashed into the neighbor's fence," which fell down. (*Id.* at 264-66). Williams and Petitioner got up and continued to fight. (*Id.* at 266). Petitioner threw Williams against a shed and continued hitting him. (*Id.*). Williams and Petitioner ended up next to Buganan's car, still fighting. (*Id.*). Williams began hitting Petitioner as hard as he could in defense and Petitioner started to run away. (*Id.* at 268).

Williams sustained several cuts to his side and head as a result of the assault, including a cut to his leg caused by wrestling with Petitioner on top of shattered glass and a cut to his head that might have been caused by glass. (Lodg. No. 1-4 at 272-73).

Petitioner testified that Buganan let him into the master bedroom and began to fondle him. (Lodg. No. 1-5 at 452-55). Williams then walked through the front door and came into the bedroom with his fist raised. (*Id.* at 454). When Williams saw Petitioner, he "jumped on the bed and [Williams] came after [Petitioner] and [they] started fighting immediately." (*Id.* at 455). Petitioner testified that the sliding glass door shattered when Williams and he "went out of the window" while fighting. (*Id.* at 457). Petitioner explained that the two were punching each other and testified that Williams was using a screwdriver to hit him. (*Id.* at 460). Petitioner sustained injuries to his chin, neck, chest, left shoulder, left side, right side, left elbow, right leg, back and head. (*Id.* at 463-68).

The jury was persuaded that Petitioner's testimony was less credible than Williams' testimony. The Court can overrule the jury's determination of credibility only if no rational trier of fact could have agreed with the jury. *Cavazos*, 535 U.S. at 2. A rational jury could have concluded that Petitioner's repeated blows to Williams, throwing him through the shattered sliding glass

door, throwing him into a shed and knocking down a fence while fighting constitutes sufficient force likely to produce great bodily injury. *See Ross v. Hense*, 2009 WL 322146, at *5 (C.D. Cal. Feb. 3, 2009); *Jackson v. Kirkland*, No. C 05-4889 MHP (pr), 2008 WL 4298217, at *19 (N.D. Cal. Sept. 19, 2008) (explaining the inquiry is properly focused on the force used and that punching a victim repeatedly in the face, pushing him backwards and hitting him with a radio is sufficient evidence of the requisite force to support the conviction). Accordingly, the evidence was sufficient to support the jury's verdict and the California Court of Appeal's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.

### 3. Burglary

Petitioner presented his insufficient evidence to convict him of burglary claim to the state appellate and supreme courts on direct review. (Lodg. Nos. 5, 9). The appellate court denied Petitioner's claim on the merits and the California Supreme Court summarily denied the petition without a statement of reasoning or citation to authority. (Lodg. Nos. 8, 10). Petitioner also raised this claim on collateral review. (Lodg. Nos. 13, 15). The California Court of Appeal and California Supreme Court denied both habeas petitions. (Lodg. Nos. 14, 16). This Court will again "look through" to the state appellate court's opinion denying the claim as the basis for authority. *Ylst*, 501 U.S. at 805-06.

> [Petitioner] argues on appeal that, because the evidence was insufficient to support the *convictions* on counts three and four, his conviction for burglary cannot stand because it is impossible to determine whether the jury relied on the legally infirm theory that [Petitioner] entered to commit the felony of assault likely to cause great bodily injury or on the legally supported theory that [Petitioner] entered to commit the felony of corporal injury to a former cohabitant or spouse with a prior offense. Our rejection of

[Petitioner's] contentions as to the factual sufficiency of the evidence to support the assault convictions is fatal to his arguments on the burglary count.

More importantly, the burglary conviction would be upheld as long as there was evidence from which the jury could have inferred [Petitioner] entered with the *intent* of committing an assault likely to cause great bodily injury, even if he did not *actually* commit those crimes. [Petitioner] makes no claim that the evidence was insufficient for a rational jury to infer he possessed the requisite intent when he entered, and this provides an independent ground for affirming his burglary conviction.

(Lodg. No. 8 at 12-13) (internal citations omitted).

### a. Summary of Arguments

Petitioner argues there was insufficient evidence to convict him of burglary because he "lived there for six years, payed [sic] rent, mail came there in [his] name, the landlord new [sic] [he] was staying there and . . . Buganan testified [he] was living there on the stand . . . ." (ECF No. 1 at 6). Petitioner further argues that because "the act occurred outside the home" he cannot be convicted of burglary. (*Id.*). Respondent argues that since there is sufficient evidence to convict Petitioner of the assaults, there is sufficient evidence to convict Petitioner of burglary because a rational jury could infer Petitioner's intent to commit the assaults. (ECF No. 10-1 at 36-37).

### b. Analysis

In California, a defendant's entry into a building with the intent to commit a larceny or any other felony meets the definition of burglary, unless the defendant has an "unconditional possessory right to enter as the occupant of that structure or . . . is invited in by an occupant who knows of and endorses the felonious intent." *People v. Salemme*, 2 Cal. App. 4th 775, 781 (1992); *see* Cal. Penal Code § 459.

The trial testimony confirms that Petitioner was not living at the mobile home the day the burglary occurred. Buganan testified that Petitioner moved in with her after he was released from prison for about a month. (Lodg. No. 1-3 at 132-33). Buganan asked Petitioner to move out and told him that she would put his belongings on the back porch for Petitioner to pick up. (*Id.* at 133-34). Buganan further testified that after Petitioner moved out, she told him that he was not welcome in her home. (*Id.*). Petitioner testified that he did not move into the mobile home with Buganan after he was released from prison, but conceded that he had clothes and tools at her home. (Lodg. No. 1-5 at 437-39). Petitioner explained that Buganan asked him to pick up his belongings from her home and that he did so on the day of the assault and burglary. (*Id.* at 440-41). Thus, there was sufficient evidence supporting the jury's finding that Petitioner had neither an unconditional possessory right to enter the property nor an invitation from an occupant with knowledge of Petitioner's felonious intent. [2]

Further, the record shows that there was ample evidence that, when Petitioner entered the mobile home, he did so with the intent to commit a felony – namely, one or more of the following crimes: corporal injury to spouse and/or former cohabitant and assault by means likely to produce great bodily

---

[2] Petitioner could have been convicted of burglary even if Petitioner was living in the mobile home the day of the burglary. *People v. Gill*, 159 Cal. App. 4th 149, 161 (2008) (finding that a person can be convicted of burglarizing their own home if there has been estrangement and spousal abuse and the victim inside fears for their safety); *see People v. Ulloa*, 180 Cal. App. 4th 601, 604-10 (2009) (explaining that a history of domestic violence with evidence of forced entry and the victim's testimony are sufficient to uphold a burglary conviction where the defendant was living with the victim at the time of entry).

injury upon both Buganan and Williams. (Lodg. No. 3-1 at 2, 177); *See People v. Allen*, 21 Cal. 4th 846, 863 n.18 (1999) ("[T]he gist of the [burglary] offense is *entry* with the proscribed intent, and that such an entry constitutes the completed crime of burglary regardless of whether . . . any felony or theft actually is committed.") (internal citation and quotation omitted). Based on the trial testimony, a rational jury could conclude that when Petitioner broke through Buganan's glass door with a hammer, he intended to commit a felony. Although the jury did not need to specify or agree upon which felony Petitioner intended to commit when he entered the mobile home, there was sufficient evidence in the record for the jury to conclude that Petitioner intended to commit one of the felonies listed above when he entered. *See People v. Hernandez*, 180 Cal. App. 4th 337, 348 (2010) ("the jury is not required to agree on which specific intent the burglar harbored at the time he entered the residence"). Accordingly, Petitioner's burglary conviction is supported by sufficient evidence and he is not entitled to habeas relief on his claim in ground one.

### 4. Conclusion

The California Court of Appeal reasonably concluded there was sufficient evidence for a jury to convict Petitioner of burglary and assault with force likely to cause great bodily injury upon both Buganan and Williams. Therefore, this Court **RECOMMENDS** claims one (insufficient evidence to convict Petitioner of burglary) and two (insufficient evidence to convict Petitioner of assault upon Williams and Buganan) be **DENIED**.

## B. Claim 3: Exclusion of Third Party Testimony

In claim three, Petitioner argues that the trial court violated his constitutional right to present an effective defense when it excluded the testimony of Buganan's ex-boyfriend, Raymond Legaux. (ECF No. 1 at 8).

### 1. State Opinion

Petitioner presented this claim to the state appellate and supreme courts on direct review. (Lodg. Nos. 5, 9). The appellate court denied Petitioner's claim on the merits and the California Supreme Court summarily denied the petition without a statement of reasoning or citation to authority. (Lodg. Nos. 8, 10). Accordingly, this Court will "look through" to the state appellate court's opinion denying the claim as the basis for authority. *Ylst*, 501 U.S. at 805-06. That court wrote:

> We conclude the exclusion of the evidence here was not an abuse of discretion. The issue here was whether Buganan (as well as Williams) truthfully described [Petitioner's] assaultive conduct. The only potential relevant "prior false report" evidence would be evidence that Buganan would exact retribution against a former boyfriend by calling police and then falsely accusing the boyfriend of assaultive behavior to have him arrested and prosecuted for crimes he had not committed. Legaux's testimony, although it would have established Buganan called the police to their home numerous times, would have shown the opposite because Legaux would have testified that on every occasion Buganan did *not falsely accuse him of assaultive behavior* to have him arrested but instead *truthfully told police* that Legaux had *not* hit her or touched her. We do not conclude the exclusion of such evidence was an abuse of the trial court's discretion, or that it denied [Petitioner] his right to present a defense.

(Lodg. No. 8 at 13-15) (internal citations omitted) (emphasis in original).

### 2. Summary of Arguments

Petitioner sought to present Legaux as an impeachment witness who "would have testified Buganan had a pattern of misleading her boyfriends, lying to them, keeping their property even after the end of the relationship, and threatening to call the police when there was an argument." (ECF No. 1 at 63, 66-67). Petitioner contends that this would show that Buganan had a "willingness to falsely implicate an ex-boyfriend in a crime which resulted in

a de facto sentence of life without the possibility of parole." (*Id.* at 67). Petitioner argues that the trial court abused its discretion in excluding this testimony because it was probative of Buganan's credibility, which was relevant to and a crucial part of Petitioner's defense. (*Id.* at 65-67).

Respondent asserts that exclusion of Legaux's testimony did not prevent Petitioner from "having a meaningful opportunity to present a complete defense" because his testimony was irrelevant and would have misled the jury "with a tangential matter." (ECF No. 10-1 at 24). Respondent explains that Legaux would have testified that whenever the police came to Buganan's mobile home she always denied that Legaux hit her, which would contradict Petitioner's argument that Buganan was willing to falsely implicate an ex-boyfriend in a crime. (*Id.* at 27). Respondent further explains that Petitioner's constitutional right to present an effective defense was not infringed because he had four witnesses testify about Buganan's "changing stories about crimes [Petitioner] committed against her in 2010 and testified himself about what occurred in 2010 and about the current crimes." (*Id.* at 28).

### 3. Legal Standard

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citation and quotation omitted); *see Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) ("[w]hether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation Clause of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense") (citations and internal quotations omitted); *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *Su Chia v. Cambra*, 360 F.3d 997, 1003

(9th Cir. 2004) *cert. denied*, 544 U.S. 919 (2005) ("The Supreme Court has made clear that the erroneous exclusion of critical, corroborative defense evidence may violate both the Fifth Amendment due process right to a fair trial and the Sixth Amendment right to present a defense.") (citations and internal quotations omitted).  Alleged trial court errors in the application of state evidentiary laws are generally not cognizable as grounds for federal habeas relief, "unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Estelle*, 502 U.S. at 69-70)); *Estelle*, 502 U.S. at 68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").

"A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions," including evidentiary rules. *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials," and the Supreme Court has approved "well-established rules of evidence [that] permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes*, 547 U.S. at 324, 326.  Evidentiary rules violate a defendant's constitutional rights only if they "infring[e] upon a weighty interest of the accused and are arbitrary or disproportionate to the purpose they are designed to serve." *Id.* at 324 (internal quotation marks omitted); *see also Scheffer*, 523 U.S. at 315 (explaining that exclusion of evidence pursuant to a state evidentiary rule is unconstitutional where it "significantly undermined fundamental elements of the defendant's defense").

"[P]resentation of defense witnesses lies at the heart of the defendant's right to mount a defense." *Moses v. Payne*, 555 F.3d 742, 767 (9th Cir. 2009) (citing *Washington v. Texas*, 388 U.S. 14, 19 (1967)). Courts "employ a balancing test for determining whether the exclusion of testimony violates due process" in habeas cases. *Alcala v. Woodford*, 334 F.3d 862, 884 (9th Cir. 2003) (citing *Miller v. Stagner*, 757 F.2d 988, 994 (9th Cir. 1985)). To determine whether testimony was constitutionally excluded, the Court must "weigh the probative value of the evidence, its reliability, whether the trier of fact can evaluate the evidence, whether the evidence is cumulative, and whether the evidence proves integral to the defense theory" against the state's interest in excluding the evidence. *Id.* (citing *Miller*, F.2d at 994). A violation of the right to present a defense merits habeas relief only if the error likely had a substantial and injurious effect on the verdict. *Jackson v. Nevada*, 688 F.3d 1091, 1104 (9th Cir. 2012).

### 4. Analysis

As Respondent notes, Petitioner's claim is based on state law. (*See* ECF No. 10-1 at 28). The state court decision addressed the trial court's alleged error in the interpretation or application of California Evidence Code § 352. (*See* Lodg. No. 8 at 14-15). Petitioner argues that the evidence was critical to the credibility of Buganan, one of the victims and chief prosecution witnesses. (ECF No. 1 at 72-73). Thus, he claims it was fundamentally unfair to exclude the evidence, or to uphold a determination of guilt without evidence of Legaux's testimony. (*Id.* at 72).

To the extent Petitioner asserts that the trial court erred in excluding Legaux's testimony under the California Rules of Evidence, he alleges a violation of state law that generally does not entitle him to federal habeas relief. The United States Supreme Court has not squarely addressed

whether or when an evidentiary rule, such as California Evidence Code § 352, that requires a trial court to "balance factors and exercise its discretion" might violate a criminal defendant's right to present a defense.  *Moses*, 555 F.3d at 758.  Supreme Court cases have "focused only on whether an evidentiary rule, by its own terms, violated a defendant's right to present evidence," and not whether a court's exercise of discretion in excluding evidence violates that right.  *Id.*

California Evidence Code § 352 is a well-established rule of evidence permitting a court to exercise discretion in admitting testimony.  *See* Cal. Evid. Code § 352.  "The rule does not, in and of itself, abridge a defendant's right to present a defense."  *Mendez v. Biter*, No. C 10-5555 PJH (PR), 2013 WL 843554, at *15 (N.D. Cal. Mar. 6, 2013) (citing *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996)).  "Because the Supreme Court's precedents do not establish a principle for evaluating discretionary decisions to exclude the evidence at issue here, AEDPA does not permit us . . . to conclude that a state trial court's exclusion of evidence . . . violated clearly established Supreme Court precedent."  *Moses*, 555 F.3d at 760.  Thus, the state court reasonably concluded that a determination of guilt without the proffered testimony was not arbitrary or disproportionate.

In any event, Petitioner fails to demonstrate how exclusion of Legaux's proposed testimony was material to his defense and violated his constitutional rights.  The one-page report of the interview of Legaux provides:

> Legaux stated that he had a tempestuous relationship with Buganan that lasted three years and that had police over at the trailer they shared "at least ten times."  According to Legaux, Buganan would threaten to have him arrested due to an outstanding warrant he had whenever they had a disagreement

that usually involved her jealous feelings. Legaux added that Buganan was the most "crazy possessive woman" he ever knew.

Legaux explained that while living in the trailer in the mountain community of Guatay she would call the police saying that there was "a man here that would not leave and had a warrant" whenever they had a disagreement or things didn't go her way. Legaux stated that he was never arrested since police would ask her if he had hit her or anyway touch her and she would invariabl[y] say "no." Legaux stated that he was afraid of getting arrested and this was one of the reasons he decided to leave her and end the relationship.

Legaux stated that he left all his possessions at Buganan['s] home including his clothes and that she refused to return them to him. Legaux stated that Buganan told him that the only way he could get his property back was if he returned to her. Legaux added that when he left Buganan she would "stalk" him for one year and a half until she met someone else ([Petitioner]).

(Lodg. No. 3-1 at 111). Petitioner's trial counsel argued that Legaux's testimony was admissible because it would present Buganan's modus operandi and intent, which is that "she lies, that she manipulates, that she keeps [her ex-boyfriends'] property and she threatens them with police action if they don't do what she wants." (Lodg. No. 1-5 at 375-76). The trial court found Legaux's proffered testimony "to be of marginal relevance" and that "said testimony would involve the undue consumption of time, and moreover, would have a tendency to confuse and mislead the jury." (*Id.* at 376).

This Court finds that Legaux's purported statement would have involved unnecessary review because it would have revealed that Buganan did not actually falsely implicate Legaux in any crime. (ECF No. 1 at 67); (Lodg. No. 3-1 at 111). The relationship history between Legaux and Buganan would not exculpate Petitioner for the counts for which he was convicted. Moreover, Petitioner's trial counsel vehemently cross-examined

and impeached Buganan.  (*See* Lodg. No. 1-3 at 151-216).  For example, Petitioner's trial counsel explained the inconsistencies between Buganan's current trial testimony and 2010 testimony and highlighted Buganan's prior statement that she falsely accused Petitioner of the 2010 crime.  (*Id.* at 162, 168-90).  Therefore, the trial court's exclusion of Legaux's testimony did not violate Petitioner's constitutional rights.  *See Holmes*, 547 U.S. at 326-27 (stating that the Constitution does not forbid exclusion of evidence that is "only marginally relevant or poses an undue risk of harassment, prejudice or confusion of the issues").  Accordingly, the Court **RECOMMENDS** that Petitioner's third ground for relief be **DENIED**.

## C.  Claim 4: Admission of Evidence Relating to Petitioner's Prior Conviction

In claim four, Petitioner asserts that the trial court abused its discretion in admitting facts relating to Petitioner's 2010 conviction.  (ECF No. 1 at 9).

### 1.  State Opinion

Petitioner presented this claim to the state appellate and supreme courts on direct review.  (Lodg. Nos. 5, 9).  The appellate court denied Petitioner's claim on the merits.  (Lodg. No. 8 at 17).  The California Court of Appeal found that admission of evidence relating to Petitioner's prior conviction "involve[d] an additional consumption of time," but that there was no abuse of discretion.  (*Id.* at 17).  The California Supreme Court summarily denied the petition without a statement of reasoning or citation to authority.  (Lodg. No. 10).  Thus, the Court must again "look through" to the state appellate court's opinion denying this claim.  *Ylst*, 501 U.S. at 805-06.  That court wrote:

[Petitioner]  argues  Buganan's  testimony  concerning  the

incident lacked any probative value because (1) Buganan told personnel at the district attorney's office (in connection with the original 2010 case) [Petitioner] had not driven a car at her or assaulted her, and he was not guilty of the charges; (2) she provided false testimony at his preliminary hearing; and (3) a third person told a defense investigator that Buganan said [Petitioner] was not guilty of the 2010 assault. However, Buganan proffered reasons for why she made statements in 2010 minimizing [Petitioner's] culpability, and it was for the jury to determine whether these reasons credibly explained why her current version of the events differed from her 2010 statements. The fact a jury must determine a witness's credibility does not mean the witness's testimony lacks probative value ab initio.

[Petitioner] also argues, even if there was some probative value to the evidence, the risk of undue prejudice and undue consumption of time was so high that it clearly outweighed the probative value of the evidence, and therefore it was an abuse of discretion to admit the evidence. However, propensity evidence under section 1109, particularly when it involves the same victim, is "highly relevant and probative of the issues in this case," and the jury's knowledge that [Petitioner] was punished for this earlier assault "substantially mitigates the kind of prejudice usually associated with the introduction of prior bad act evidence." Although admission of the evidence did involve an additional consumption of time, we conclude it was not an abuse of discretion for the court to conclude the probative value of the evidence warranted the additional time necessary to present the evidence.

(Lodg. No. 8 at 15-17) (internal citations omitted).

## 2. Summary of Arguments

Petitioner argues that the trial court abused its discretion by permitting a "mini-trial of the 2010 incident." (ECF No. 1 at 9). He contends that absent Buganan's testimony regarding the 2010 incident, "it is reasonably probable a more favorable outcome would have occurred." (*Id.*). Respondent argues that "admission of [propensity] evidence concerning [Petitioner's] 2010 convictions . . . . is not a basis for relief . . . . because the Supreme Court has

expressly declined to rule upon whether the admission of propensity evidence violates due process. (ECF No. 10-1 at 28, 31).

### 3. Legal Standard

Typically, "a state court's evidentiary ruling, even if erroneous, is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process." *Spivey v. Rocha*, 194 F.3d 971, 977-78 (9th Cir. 1999). In order to establish that evidence violated a criminal defendant's due process rights, the defendant must demonstrate that the admission of the challenged evidence "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Patterson v. New York*, 432 U.S. 197, 202 (1977) (internal citations and quotations omitted); *see also Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

California Evidence Code § 1109 governs the admission of prior acts of domestic violence in a criminal proceeding and provides in relevant part:

> in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to Section 352.

Cal. Evid. Code § 1109(a)(1). Under § 352, the trial court may exclude evidence that is admissible under § 1109 if "the probative value is substantially outweighed by the probability that its admission (a) will necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." Cal. Evid. Code § 352. Section 1101 generally permits the admission of relevant character evidence or prior bad acts only to prove a fact other than a criminal defendant's conduct on a particular occasion or his propensity to commit such an act. Cal. Evid. Code § 1101. Section 1109 permits propensity evidence

16cv3055-DMS-MDD

that would be inadmissible under § 1101 "so long as evidence regarding prior acts of domestic violence committed by a criminal defendant is not rendered inadmissible by the balancing test set forth in section 352." *Ross v. Carey*, No. 2:05-cv-01705 MCE CHS P, 2010 WL 2975779, at *12 (E.D. Cal. July 27, 2010) (citing *People v. Johnson*, 185 Cal. App. 4th 520, 529 (2010) (noting that Cal. Evid. Code § 1109 allows "testimony about prior misconduct [and] . . . allow[s] the jury to draw propensity inferences from the prior acts" so long as the evidence is admissible under Cal. Evid. Code § 352.); *People v. Jennings*, 81 Cal. App. 4th 1301, 1309 n.3 (2000) (finding admission of prior acts evidence under § 1109 to demonstrate a defendant's propensity to commit a crime did not amount to a due process violation because § 352 requires such evidence to be more probative than prejudicial)).

### 4.  Analysis

Under the highly deferential standard established by AEDPA, the state court's rejection of Petitioner's due process claim is not contrary to or an unreasonable application of clearly established federal law and was not based on an unreasonable determination of the facts.  The Supreme Court "has never expressly held that it violates due process to admit other crimes evidence for the purpose of showing conformity therewith, or that it violates due process to admit other crimes evidence for other purposes without an instruction limiting the jury's consideration of the evidence to such purposes." *Garceau v. Woodford*, 275 F.3d 769, 774 (9th Cir. 2001), *rev'd on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003).  The Ninth Circuit stated:

> The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process.  Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair,

it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of a writ. Absent such "clearly established federal law," we cannot conclude that the state court's ruling was an "unreasonable application."

*Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (internal citations omitted). Because there is no clearly established Supreme Court precedent governing a trial court's discretionary decision to admit evidence as a violation of due process, the Court **RECOMMENDS** that Petitioner's fourth ground for relief be **DENIED**. *See Rodriguez v. Hatton*, No. 1:16-cv-00180-JLT (HC), 2017 WL 931876, at *11 (E.D. Cal. Mar. 9, 2017) (denying habeas relief where the petitioner claimed his constitutional rights were violated when the trial court admitted prior acts of domestic violence involving the petitioner and the victim under Cal. Evid. Code § 1109 because there is no clearly established Supreme Court precedent governing this issue).

## C. Claim 5: *Romero*

Petitioner claims that "the trial court committed an abuse of discretion in refusing to strike a prior." (ECF No. 1 at 9). The Court construes this as Petitioner's fifth claim for relief.

### 1. State Opinion

Petitioner presented this claim to the state appellate and supreme courts on direct review. (Lodg. Nos. 5, 9). The appellate court denied Petitioner's claim on the merits and the California Supreme Court summarily denied the petition for review. (Lodg. Nos. 8 at 21; 10). Petitioner also raised this claim on collateral review. (Lodg. Nos. 13, 15). The California Court of Appeal and California Supreme Court denied the habeas petitions. (Lodg. Nos. 14, 16). Once again, the Court must "look through" to the state appellate court's opinion denying this claim. *Ylst*, 501 U.S. at 805-06. That

court wrote:

> [Petitioner] has not clearly shown the sentencing court abused its discretion. The trial court was aware of its discretion to dismiss the prior strike conviction allegation and [Petitioner] does not suggest the court considered any impermissible factors in declining to do so. The probation report and argument from counsel fully informed the court of [Petitioner's] criminal history and current offense, and the trial court was aware of its discretion to dismiss and did not consider any impermissible factors in declining to dismiss. The record showed [Petitioner] had served many years in prison (and violated parole multiple times), been incarcerated most of the time since 1997, twice attacked women after being released from prison even before the instant offense, and again attacked Buganan less than a year after being released from prison, all of which provided support for the conclusion [Petitioner] was not a person outside the spirit of the three strikes law.

> [Petitioner] asserts the facts of the present crime do not warrant a life sentence because they did not involve great bodily injury, were crimes involving passion, and it was merely fortuitous that it occurred in Buganan's home rather than on the street. Moreover, he argues one of his earlier crimes was of ancient vintage, and the other arose from the same dysfunctional relationship with Buganan as the present offense, which showed he was not a danger to the community. However, our role is not to decide the merits of his motion anew, but rather to assess whether the court abused its discretion in balancing "the nature and circumstances of the defendant's present felonies and prior serious and/or violent felony convictions, and the particulars of [the defendant's] background, character, and prospects." "The concept of discretion implies that, at least in some cases, a decision may properly go either way." The fact [Petitioner] may articulate good arguments for dismissing a prior strike conviction allegation in the furtherance of justice does not require reversal.

> The record reflects the court was fully aware of its discretion to dismiss a prior strike conviction allegation for purposes of sentencing under the three strikes scheme but declined to exercise its section 1385 discretion. We conclude the trial court did not

16cv3055-DMS-MDD

abuse its discretion by denying [Petitioner's] *Romero* motion.

(Lodg. No. 8 at 17-21) (internal footnotes and citations omitted).

### 2. Summary of Arguments

Petitioner argues the trial court abused its discretion in refusing to dismiss one or both of his strikes because the current offense did not "demonstrate [Petitioner] was a danger to the community." (ECF No. 1 at 9, 82, 91). Respondent contends that "failing to strike prior convictions under California law is not cognizable in federal habeas corpus" and the trial court's decision was correct. (ECF No. 15 at 3, 7).

### 3. Legal Standard

California trial courts have discretion to dismiss prior strikes in the interest of justice under California Penal Code § 1385(a). *Romero*, 13 Cal. 4th at 529-30. In ruling on a *Romero* motion, "the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the . . . spirit [of California's Three Strikes law], in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." *People v. Williams*, 17 Cal. 4th 148, 161 (1998).

On federal habeas review, the federal district court is bound by the California Court of Appeal's reasonable determination under state law which is supported by the record. *See Waddington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) ("we have repeatedly held that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions") (citation and internal quotations omitted); *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("a state court's interpretation of state law, including

one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus"); *Hicks v. Feiock*, 485 U.S. 624, 630 n.3 (1988) (federal habeas courts may not disregard intermediate appellate state court's interpretation of state law, unless the federal court "is convinced by other persuasive data that the highest court of the state would decide otherwise") (citation and quotations omitted).

### 4. Analysis

To the extent Petitioner claims that the trial court erred under state law by using the wrong standard under § 1385, his claim should be rejected because it is not cognizable on federal habeas review. *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002) (a challenge to the denial of a *Romero* motion is a state law claim that cannot be considered in a federal habeas petition), *vacated on other grounds by Mayle v. Brown*, 538 U.S. 901 (2003); *see also Estelle*, 502 U.S. at 67-68.

To the extent Petitioner's claim is reviewable based on a possible denial of due process, ground five lacks merit because Petitioner has not shown his sentencing was fundamentally unfair. Following the jury trial which returned guilty verdicts as to all charged offenses and the bench trial finding all of the criminal history allegations of the information to be true, Petitioner requested that both of his strike priors be stricken. (Lodg. No. 1-7 at 653-55).

Petitioner's counsel stated that "while [Petitioner's] record is not crystal clean, given the nature of the offense, and given some of the evidence that was received, I would ask the court to fashion a sentence that is appropriate." (*Id.* at 657). Specifically, Petitioner argued the court should strike his strike priors because he accepted responsibility for his actions and "demonstrates a willingness to rehabilitate himself." (*Id.* at 655-56). Petitioner's trial counsel argued that "sentencing under the Three Strikes law . . . is disproportionate

to the severity of the offenses here. . . . [because] there was no great bodily injury" and indicated that at the least, Petitioner's 1997 strike should be dismissed because it is "aged." (*Id.* at 656-57). Further, Petitioner's counsel opined that sentencing Petitioner to 25 years would be appropriate given that Petitioner was 52 years old at sentencing, which would make him 72 years old by the time he completed his sentence. (*Id.* at 659). The People argued that Petitioner falls squarely within "the spirit of the three strikes law" because he is a "violent man, and has been violently attacking women for over ten years." (*Id.* at 660).

The Probation Officer's Report indicated that Petitioner's criminal history went back to 1982.[3] (Lodg. No. 3-1 at 34). The report noted that based on his strike priors, Petitioner "is absolutely ineligible for a grant of probation." (*Id.* at 48). The probation officer ultimately recommended that probation be denied and Petitioner be sentenced "for the term of 50 years to life plus 11 years." (*Id.* at 51).

After reviewing the probation officer's 28-page report and hearing the parties' arguments, the trial court denied Petitioner's motion to strike his two

---

[3] In 1982, Petitioner was charged with burglary and convicted of receiving stolen property. (Lodg. No. 3-1 at 34). In 1996, Petitioner was charged with disorderly conduct and convicted of offensive words in a public place. (*Id.*). In 1997, Petitioner was charged with burglary, attempted murder and assault with a firearm and convicted of first-degree residential burglary and petty theft with a prior. (*Id.*). In 2003, Petitioner pled guilty to corporal injury on a spouse or cohabitant and was charged with first-degree residential burglary and grand theft. (*Id.* at 34-35). In 2010, Petitioner pled guilty to corporal injury on a spouse or cohabitant with a prior domestic violence offender allegation, terrorist threats and contempt of court. (*Id.* at 37).

prior strikes. The trial court found that Petitioner did not evince "any genuine remorse for the conduct that brings him before the court" and incorporated by reference "the remarks and reasoning . . . provided for [the denial of Petitioner's motion to strike prior strikes] in the course of the hearing on December 4th[, 2012]." (ECF No. 18-1 at 1-2). On December 4, 2012, the trial court stated:

> As someone once said, "Houston, we have a problem," because having given this some substantial thought and having fully considered the probation officer's report, in good conscience and consistent with the applicable law and legal principles, I find myself unable to exercise [*Romero*] discretion so as to strike either of the strike-prior allegations. And subject to the arguments of counsel, I respectfully decline to do so.

(Lodg. No. 1-1 at 12). On May 31, 2013, the trial court concluded that there was not "anything new and different so as to compel the court to change the decision that it rendered and articulated in the course of the sentencing hearing on December 4th of last year." (ECF No. 18-1 at 2). This Court finds that the trial court's decision was not fundamentally unfair based on Petitioner's criminal record.

In light of the facts in this case, the trial court's conclusion that Petitioner's sentence fell within the spirit of California's Three Strikes law, and the Court of Appeal's determination that the trial court's ruling was not an abuse of discretion under § 1385, were not objectively unreasonable. Further, Petitioner fails to demonstrate that the denial of his *Romero* motion was fundamentally unfair. Accordingly, this Court **RECOMMENDS** that ground five of the Petition be **DENIED**.

## V. <u>CONCLUSION</u>

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report

and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

IT IS HEREBY ORDERED that no later than **June 14, 2017**, any party to this action may file written objections with this Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

IT IS FURTHER ORDERED that any reply to the objections shall be filed with the Court and served on all parties no later than **June 21, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998).

IT IS SO ORDERED.

Dated:   May 23, 2017

_____
Hon. Mitchell D. Dembin
United States Magistrate Judge

16cv3055-DMS-MDD